UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KING RANGE., JR.

                            Plaintiff,

        -against-

471 WEST BROADWAY LLC AND SOHO
MERCHANDISING GROUP INC.

                          Defendants.
-----------------------------------------------------------------x

**1:23 CV 4358**

**COMPLAINT**

**JURY TRIAL REQUESTED**

## <u>COMPLAINT</u>

Plaintiff King Range., Jr. ("Plaintiff"), by his counsel, Parker Hanski LLC, as and for the Complaint in this action against Defendants 471 West Broadway LLC and Soho Merchandising Group Inc. (collectively, "Defendants"), hereby alleges upon information and belief as follows:

## <u>NATURE OF THE CLAIMS</u>

1.  Plaintiff is an individual with a mobility disability due to a physiological condition that prevents him from walking.

2.  Unable to ambulate using his musculoskeletal system, Plaintiff uses a wheelchair for mobility.

3.  Ari is a clothing store located at 471 West Broadway, New York, NY ("Ari").

4.  Defendants are the owners, operators, and landlord of Ari.

5.  Ari is a place of public accommodation.

6.  Defendants violate each of the laws that prohibit disability discrimination at places of public accommodations through their ownership, operation, control, and lease of, Ari.

7.  For example, Defendants discriminate against Plaintiff based on disability as they violate their legal obligation to provide that Ari's premises is physically accessible to and usable by individuals with disabilities.

8.  Plaintiff brings this action because Defendants ongoing refusal make Ari accessible to and usable by individuals with disabilities denies him full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations ("equal access") of Ari, a place of public accommodation.

9.  Defendants created architectural elements at Ari that function as barriers to wheelchair access ("architectural barriers").

10. Defendants also maintain architectural barriers at Ari.

11. The architectural barriers at Ari- for example, steps at its public entrance- deny entry to Plaintiff, and other individuals that require wheelchairs, due to disability.

12. The architectural barriers at Ari obstruct Plaintiff's ability to access the publicly available offerings therein based on disability.

13. By maintaining architectural barriers, Defendants deny Plaintiff, based on disability, equal access to Ari, a place of public accommodation.

14. The architectural barriers Defendants maintain, deny Plaintiff, an individual with a disability who requires a wheelchair for mobility, entry to Ari.



One of the Architectural Barriers at Ari, its Stepped Entrance

15. By maintaining architectural barriers, Defendants deny Plaintiff, a disabled wheelchair user, the opportunity to patronize Ari based on disability - an opportunity Defendants make available to members of the public without mobility disabilities.

16. Defendants discriminate against Plaintiff on the basis of disability as due to his use of a wheelchair for mobility - as opposed to his legs - they deny him equal access to Ari.

17. By denying Plaintiff equal access to Ari, Defendants unlawfully discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; the New York Human Rights Law ("State HRL"), New York Executive Law ("N.Y. Exec. Law") Article 15; the New York Civil Rights Law, § 40 *et seq*. ("N.Y. CRL"); and the New York City Human

Rights Law ("City HRL"), Administrative Code of the City of New York ("N.Y.C. Admin. Code") Title 8.

18. Defendants violate the ADA, the State HRL, the N.Y. CRL and the City HRL (collectively, the "Human Rights Laws") directly and through the actions, of their agents and employees.

19. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

20. Defendants chose to ignore the explicit legal requirements that obligate them to make Ari, a place of public accommodation physically accessible and usable by persons with disabilities[1].

21. By ignoring their obligation to make Ari accessible, Defendants reveal their indifference to Plaintiff's (and other individuals with disabilities') right to equal access to their place of public accommodation.

22. Defendants, undoubtably aware that their decision to maintain architectural barriers in violation of the Human Rights Laws would be indiscernible to most persons, presumed that they would never have to make Ari accessible and provide equal access to individuals with disabilities.

23. Plaintiff, however, acts to compel Defendants to comply with the Human Rights Laws.

---

[1] As used in Plaintiff's Complaint the terms "accessible" and "readily accessible to and usable by" mean that the place of public accommodation complies with the design and construction standards referenced in Plaintiff's Complaint and can be approached, entered, and used by people having physical disabilities. *See* 42 U.S.C. § 12183, 28 C.F.R. § 36.406, and N.Y.C. Admin. Code § 27-232; and § 28-1102.1.

24. Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses, to redress Defendants' unlawful disability discrimination against him in violation of the Human Rights Laws.

25. Plaintiff seeks to have Defendants make Ari physically accessible to and usable by individuals with disabilities so that Plaintiff, and other persons with mobility disabilities, have the opportunity to fully and equally enjoy the goods, services, facilities, privileges, advantages, and accommodations of Ari, a place of public accommodation.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiff's claims involve federal questions regarding the deprivation of Plaintiff's rights under the ADA.

27. This Court also has supplemental jurisdiction over Plaintiff's State HRL, N.Y. CRL, and City HRL claims pursuant to 28 U.S.C. § 1367(a).

28. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' discriminatory acts alleged herein occurred in this district and the place of public accommodation is located in this district.

## PARTIES

### *Plaintiff*

29. Plaintiff suffers from a physiological condition that inhibits his ability to walk and which restricts his body motion range and movement.

30. Plaintiff is therefore an individual with a disability under the Human Rights Laws.

31. Due to his impairment, Plaintiff uses a wheelchair for mobility.

5

32. Plaintiff King Range., Jr. is a resident of the State and City of New York.

33. At all times relevant to this action, Plaintiff King Range., Jr. has been and remains a resident of the State and City of New York.

34. Plaintiff enjoys going to Soho, the neighborhood in which Ari is located.

35. Plaintiff goes to Soho approximately six to ten times a year.

36. Plaintiff goes to Soho to shop and enjoy the neighborhood.

37. When in Soho Plaintiff visits stores that do not have barriers to wheelchair access.

38. In June 2022 Plaintiff was in Soho and wanted to patronize Ari.

39. Plaintiff desired to patronize Ari as the clothing in Ari's display window appealed to him.

40. However, Plaintiff was denied entry to Ari as Defendants maintain steps - an architectural barrier which Plaintiff cannot traverse in his wheelchair - at Ari's entrance.

41. During the week of May 8, 2023, Plaintiff was in Soho and again desired to go to Ari.

42. However, Plaintiff was deterred from doing so due to the steps Defendants continue to maintain at Ari's entrance.

43. Plaintiff desires to go to Ari to access its offerings when he is in Soho.

44. Despite his desire to access Ari, Plaintiff is denied the opportunity to do so due to the steps at Ari's entrance, and the other architectural barriers detailed in Paragraph 107 herein.

45. Plaintiff personally observed the architectural barriers Ari's entrance detailed in Paragraph 107 herein.

46. Plaintiff has been made aware of the architectural barriers within Ari detailed in Paragraph 107 herein.

47. Plaintiff would visit Ari but for the architectural barriers that deny him equal access to the place of public accommodation and the offerings therein.

48. Plaintiff continues to be deterred from visiting Ari due to the step and other architectural barriers to access extant at Ari.

49. The architectural barriers detailed in Paragraph 107 herein exclude Plaintiff, based on disability, from the equal opportunity to participate in, or benefit from, the goods, services, facilities, privileges, advantages, and accommodations that Defendants offer to the general public at Ari.

### ***Defendants***

50.  471 West Broadway LLC is a Domestic Limited Liability Company formed pursuant to the New York Limited Liability Company Law.

51. 471 West Broadway LLC engages in business in New York.

52. As an entity formed pursuant to the New York Limited Liability Company Law, 471 West Broadway LLC is not a governmental entity.

53. 471 West Broadway LLC owns the building located at 471 West Broadway in New York County, New York ("471 West Broadway").

54. Soho Merchandising Group Inc. is a Domestic Business Corporation formed pursuant to the New York Business Corporation Law of the State of New York.

55. As an entity formed pursuant to the New York New York Business Corporation Law, Soho Merchandising Group Inc. is not a governmental entity.

56. Soho Merchandising Group Inc. engages in business in New York.

57. Soho Merchandising Group Inc. owns and operates, and at all relevant times has owned and operated Ari.

58. Soho Merchandising Group Inc. leases the space in which Ari is located directly, or indirectly via a sublease, from 471 West Broadway LLC.

59. 471 West Broadway LLC and Soho Merchandising Group Inc. have a written agreement for the lease or sublease of the space in which Ari is located.

### *The Place*

60. Ari is located in downtown Manhattan, in the neighborhood known as SoHo.

61. Ari's Soho neighborhood is known as "one of New York City's prime shopping districts . . . [characterized by] luxury boutiques and independent-designer outposts". *SoHo | The Official Guide to New York City*, NYC: The Official Guide, https://www.nycgo.com/boroughs-neighborhoods/manhattan/soho/ (last visited May 24, 2023)**.**

62. Ari's Soho neighborhood is also "known for its variety of shops ranging from trendy upscale boutiques to national and international chain store outlets". *SoHo, Manhattan – Wikipedia*, Wikipedia, the free encyclopedia, https://en.wikipedia.org/wiki/SoHo,_Manhattan (last visited May 24, 2023).

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

63. Ari is operated by private entities as neither of the Defendants is a State or local government; a department, agency, special purpose district, or other instrumentality of a State or local government; or a commuter authority. 42 U.S.C. §§ 12131(1) and 12181(6).

64. The operations of Ari affect commerce. 28 C.F.R. § 36.104.

8

65. Ari, a clothing store located at 471 West Broadway, is a place of public accommodation pursuant to the Human Rights Laws. 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; N.Y. Exec. Law § 292(9); and the N.Y.C. Admin. Code § 8-102.

66. Defendants own, lease, lease to, control or operate Ari and the space in which Ari is located.

67. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the Human Rights Laws. *28* C.F.R. § 36.201(b); *See also* 42 U.S.C. 12182(a); N.Y. Exec. Law §296(2)(a); N.Y.C. Admin. Code § 8-107(4)(a).

68. 471 West Broadway LLC, as owner of the building located at 471 West Broadway in which Ari is located, is an entity required to comply with the Human Rights Laws. *See Id.*

69. 471 West Broadway LLC, [as] lessor of the space in which Ari is located is an entity required to comply with the Human Rights Laws. *See Id.*

70. Soho Merchandising Group Inc. as owner of Ari, is an entity required to comply with the Human Rights Laws. *See Id.*

71. Soho Merchandising Group Inc. as operator of Ari, is an entity required to comply with the Human Rights Laws. *See Id.*

72. The 471 West Broadway building in which Ari is sited is also a commercial facility subject to the ADA and the ADA Standards. See 42 U.S.C. § 12181(2).

73. N.Y.C. Admin. Code § 19-152 and § 7-210 impose a non-delegable duty on the owners of real property to repave, reconstruct, repair, and maintain the public sidewalk that abuts their real property.

74. As 471 West Broadway LLC is required to maintain, repave, reconstruct, and repair the public sidewalk that abuts its property, it controls, manages, and operates the public sidewalk that adjoins 471 West Broadway.

75. 471 West Broadway LLC therefore controls, manages, and operates the parts of the public sidewalk that constitute Ari's public entrance.

76. Numerous architectural barriers at Ari prevent or restrict physical access to Plaintiff and other persons with disabilities.

77. The architectural barriers at Ari include gateway barriers – such as a stepped entrance.

78. The gateway barriers at Ari exclude Plaintiff and other persons with mobility disabilities from patronizing Ari, as they completely deny Plaintiff, and other persons that use wheelchairs, the opportunity to enter Ari.

79. Ari initially opened for business in 1999.

**Defendants Performed Alterations to Ari's Space**

80. To create Ari Defendants renovated, remodeled, and reconstructed ("Modified") the space now occupied by Ari between 1999 and 2002.

81. Ari's premises was therefore renovated, remodeled, and reconstructed after January 26, 1992.

82. The work performed between 1999 and 2002 to construct Ari within 471 West Broadway included the demolition of interior walls and fixtures and the construction of new walls and fixtures.

83. The build out of Ari's space changed the way the space now occupied by Ari at 471 West Broadway is used.

84. The renovation, remodeling and reconstruction work performed to build out Ari between 1999 and 2002 included changes to the space Ari now occupies that affected, or which could have affected, the usability of the space.

85. Based on the foregoing renovation, remodeling, and reconstruction work, Ari is "altered" within the meaning of the ADA. See 28 C.F.R. 36.402(b)(1).

86. The renovated, remodeled, reconstructed spaces, areas, and elements of Ari are "altered areas" within the meaning of the ADA. *See Id.*

87. The renovated, remodeled, reconstructed spaces, areas, and elements of 471 West Broadway related to Ari constitute "altered areas" within the meaning of the ADA. *See Id.*

**Defendants' Did Not Comply with the Accessibility Requirements Detailed in their Architectural Drawings**

88. The buildout of, and subsequent renovations to, Ari's space were done pursuant to architectural drawings that detailed the work Defendants would perform to buildout and remodel Ari. See N.Y.C. Admin Code § 27-162.

89. The architectural drawings utilized by Defendants to buildout Ari specified the dimensions and placement of the architectural elements and fixtures at Ari. *See Id.*

90. The architectural drawings detailed the floor plan, layout, location of fixtures, flooring, entrances, demised spaces, and other architectural elements at Ari. *See Id.*

91. The architectural drawings also detailed the legal requirements that Defendants were obligated to comply with in the design and construction of Ari. *See Id.*

92. The legal requirements detailed in the architectural drawings included the design and construction standards that mandate the provision of physical access for persons with physical disabilities at Ari. *See Id.*

93. The design and construction standards referenced in Defendants' architectural drawings included:

    a.  the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 et seq. (the "1968 BC"), inclusive of ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"[2], and together with the 1968 BC, the "1968 NYC Standards"); and

    b.  the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A[3]; (hereinafter referred to as the "1991 ADA Standards" (hereinafter referred to as the "1991 ADA Standards" and together with the 1968 NYC Standards, the "Initial Accessibility Standards").

94. Defendants failed to comply with the Initial Accessibility Standards when they renovated, remodeled and reconstructed the space Ari now occupies.

95. When Defendants Modified Ari's space and at all times thereafter that they performed design and construction work to its space, Defendants had knowledge of, and specific notice regarding their obligation to comply with the Initial Accessibility Standards.

---

[2] *See* N.Y.C. Admin Code §§ 27-292.2 and Reference Standard 4-6.
[3] Republished in 28 CFR part 36 Appendix D on Sept. 15, 2010. 28 C.F.R. § 36.104, 75 Fed. Reg. 56236, 56237 (September 15, 2010).

96. Defendants therefore knowingly failed to comply with the Initial Accessibility Standards when they Modified Ari's premises and the parts of 471 West Broadway related to Ari's space.

97. Defendants also acted with deliberate indifference to the equal access rights of persons with disabilities due to their failure to comply with the Initial Accessibility Standards.

**Defendants' Failed to Follow the Accessibility Requirements Detailed in their Lease Documents.**

98. The lease agreement between the Defendants for Ari's premises provides that the space must comply with the Human Rights Laws.

99. The lease agreement between the Defendants for Ari's premises provides that the space must comply with the Initial Accessibility Standards, and the later enacted federal, state and local laws and regulations that require Ari's space to be accessible to persons with disabilities.

100. The later enacted laws and regulations concerning accessibility for persons with disabilities include:

a. the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 et seq. [4] and Appendix E (the "2008 BC"), inclusive of ICC A117.1-2003 (the "2008 Ref Std") and together with the 2008 BC, the "2008 NYC Standards");

b. the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 et seq. and Appendix E (the "2014 BC"), inclusive of and ICC A117.1-2009[5] (the "2014 Ref. Std., and together with the 2014 BC, the "2014

---

[4] As such provisions (N.Y.C. Admin. Code § 28-1101 and Appendix E) existed prior to December 31, 2014, the effective date of the 2014 BC.
[5] *See* N.Y.C. Admin Code § 28-1101.2 and Appendix E, § § E101 and E112.

NYC Standards" and collectively with the 1968 NYC Standards and the 2008 NYC Standards, the "NYC Standards").

c. the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (hereinafter referred to as the "2010 ADA Standards", and together with the 1991 ADA Standards, the "ADA Standards" and collectively with the NYC Standards the "Accessibility Standards").

101.     471 West Broadway LLC is aware of its obligation to provide an accessible place of public accommodation.

102.     As 471 West Broadway LLC is aware of its obligation to provide an accessible place of public accommodation, it knowingly and with deliberate indifference fails to comply with the Accessibility Standards.

103.     Soho Merchandising Group Inc. is aware of its obligation to provide an accessible place of public accommodation.

104.     As Soho Merchandising Group Inc. is aware of its obligation to provide an accessible place of public accommodation, it knowingly and with deliberate indifference fails to comply with the Accessibility Standards.

105.     As a result of Defendants' failure to comply with the Accessibility Standards, the services, features, elements, and spaces of Ari are not accessible to Plaintiff as required by the Human Rights Laws. *See* 42 U.S.C. § § 12182(a), § 12183(a), and § 12186(b); N.Y. Exec. Law § 296(2)(a); and N.Y.C. Admin. Code § 8-107(4).

106.     Because Defendants fail to comply with the Accessibility Standards Plaintiff was, and remains, unable to enjoy safe and equal access to Ari a place that is open and available to the public.

107.     Architectural barriers which Plaintiff encountered and those that deter him from patronizing Ari include, but are not limited to, the following:

**No Exterior Accessible Route**

I.  No accessible route is provided from the public street and sidewalk to the building entrance.
    *Defendants fail to provide that at least one accessible route shall be provided within the site from public streets and sidewalks to the accessible building or facility entrance they serve. See 1991 ADA Standards § 4.1.2(1), 2010 ADA Standards § 206.2.1, 1968 NYC Standards § 27-292.5(b), and 2014 NYC Standards § 1104.1.*

II. There are two (2) steps between the sidewalk and the building entrance.
    *Defendants fail to provide that vertical changes in level at accessible routes shall be 1/4-inch-high maximum. See 1991 ADA Standards § 4.3.8, 2010 ADA Standards § Standards § 403.4, 1968 NYC Standards § 4.3.8, and 2014 NYC Standards § 403.4.*

    *Defendants fail to provide that changes in level at accessible routes between 1/4-inch-high minimum and 1/2-inch-high maximum shall be beveled with a slope not steeper than 1:2. See 1991 ADA Standards § 4.3.8, 2010 ADA Standards § 403.4, 1968 NYC Standards § 4.3.8, and 2014 NYC Standards § 403.4.*

    *Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a curb ramp, ramp, elevator, or platform lift. See 1991 ADA Standards § 4.3.8 and 1968 NYC Standards § 4.3.8.*

    *Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA Standards § 303.4 and 2014 NYC Standards § 303 .4.*

**No Accessible Entrance**

III. The public entrance is not accessible.
    *Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 ADA Standards § 4.1.3.8(a)(i).*

    *Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 ADA Standards § 206.4.1.*

    *Defendants fail to provide that primary entrances are accessible. See 1968 NYC Standards § 27-292.5(a).*

    *Defendants fail to provide that each public entrance is accessible. See 2014 NYC Standards § 1105.1.*

IV. No level and clear maneuvering clearances are provided at the entrance door. On the pull side of the entrance door the step at the doorway is located within the required

15

maneuvering clearance. In addition, the storefront projects into required pull side maneuvering clearance.

*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a front approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA Standards § 4.13.6, 2010 ADA Standards § 404.2.4, 1968 NYC Standards § 4.13.6, and 2014 NYC Standards § 404.2.3.*

V.  The threshold at the exterior side of the entrance doors is in excess of 1/2-inch-high.
*Defendants fail to provide that the thresholds at doorways are maximum of 1/2-inch-high. See 1991 ADA Standards § 4.13.8, 2010 ADA Standards § 404.2.5, 1968 NYC Standards § 4.13.8, and 2014 NYC Standards § 404.2.4.*

**No Accessible Sales Counter**

VI.  The sales counter is not accessible.
*Defendants fail to provide that at least one of each type of sales counter and service counter shall be accessible. See 1991 ADA Standards § 7.2, 2010 ADA Standards § 227.3, 1968 NYC Standards § 27-292.1, and 2014 NYC Standards § 1109.123.*

*Defendants fail to provide that where sales counters and service counters or dispersed throughout the building or facility, accessible sales counters and service counters also shall be dispersed. See 1991 ADA Standards § 7.2, 2010 ADA Standards § 227.3, 1968 NYC Standards § 27-292.1, and 2014 NYC Standards § 1109.123.*

VII.  The sales counter does not appear to have an accessible portion of counter that extends the same depth as the general counter.
*Defendants fail to provide that the accessible portion of the sales countertop or service countertop shall extend the same depth as the general sales countertop or service countertop. See 2010 ADA Standards § 904.4 and 2014 NYC Standards § 904.3.*

VIII.  The sales counter is higher than 36 inches above the finish floor.
*Defendants fail to provide that an accessible portion of the (sales or service) counter surface is 36 inches long minimum and 36 inches high maximum above the finish floor.*
*Defendants fail to provide an unobstructed clear floor space is positioned for a parallel approach adjacent to the accessible portion of the counter. See 1991 ADA Standards § 7.2, 2010 ADA Standards § 904.4.1, 1968 NYC Standards § 27-292.1, and 2014 NYC Standards § 904.3.1.*

**No Accessible Means of Egress**

IX.  The exit door, which is also the entrance door, is not accessible as described above.
*Defendants fail to provide that accessible spaces shall have accessible means of egress provided in the same number as required for exits by local building/life safety regulations. See 1991 ADA Standards § 4.1.3(9).*
*Defendants fail to provide that buildings shall have at least one primary entrance (exit) accessible to and usable by individuals who use wheelchairs, and such entrance shall provide access to a level that makes elevators available in buildings where elevators are provided. See 1968 NYC Standards § 27-357(d).*
*Defendants fail to provide that accessible spaces shall have not less than one accessible means of egress, or where more than one general means of egress is required from any accessible space, each accessible portion on the space shall be served by not less than two accessible means of egress. See 2010 ADA Standards § 207.1 (2000 IBC 1003.2.13) and 2014 NYC Standards § 1007.1.*

*Defendants fail to provide that each required accessible means of egress shall be continuous to a public way. See 2010 ADA Standards § 207.1 (2000 IBC 1003.2.13.1) and 2014 NYC Standards § 1007.2.*

X.  Direction signage indicating the location of means of egress, including accessible means of egress, are not provided.
*Defendants fail to provide that directional signage indicating the location of the other means of egress (and which are accessible means of egress) shall be provided at inaccessible exits serving a required accessible space. See 2010 ADA Standards § 207.1 (2000 IBC 1003.2.13.6) and 2014 NYC Standards § 1007.10(1).*

108.    A full inspection of Ari will reveal the existence of other barriers to access.

109.    To properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of Ari to catalogue other architectural barriers and have Defendants remediate Ari so that it is accessible to him.

110.    Plaintiff therefore gives notice that, to the extent not contained in this Complaint, he intends to amend his Complaint to include any violations of the Accessibility Standards or Human Rights Laws discovered during an inspection of Ari.

111.    Defendants deny Plaintiff the opportunity to participate in or benefit from their services and accommodations because of disability.

112.    Defendants provide Plaintiff and similarly situated disabled persons with lesser opportunity to enjoy the facilities, goods, services, offerings, and accommodations of Ari, than the opportunity Defendants provide to non-mobility impaired customers.

113.    Defendants provide non-mobility impaired persons with the physical access to Ari they are legally obligated to provide under the N.Y.C. Admin. Code and the N.Y. Executive Law.

114.    In stark contrast, Defendants fail to provide Plaintiff and other mobility impaired persons with the physical access Defendants are legally obligated to provide under the N.Y.C. Admin. Code and the N.Y. Executive Law.

115.    Defendants' discriminatory policy is clear: Inclusion for non-mobility impaired persons; Exclusion for mobility-impaired persons.

116.    Defendants discriminate against Plaintiff, as based on disability, they treat him, and other individuals with mobility disabilities, worse than non-mobility impaired persons.

117.    Defendants continue to discriminate against Plaintiff and other mobility impaired customers by limiting and reducing the options available to disabled patrons as compared to the options available to nondisabled customers.

118.    Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures comply with the Human Rights Laws.

119.    Defendants have not provided accommodations or modifications so that Plaintiff and other persons with disabilities can have equal opportunity with respect to Ari.

120.    Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the Human Rights Laws. This threat is particularly evidenced by the existence of barriers to access at Ari that deter and deny Plaintiff access based on disability.

121.    Plaintiff desires to visit Ari but is deterred from doing so due to the architectural barriers Defendants maintain at Ari's premises.

122.    While Plaintiff desires to visit Ari he is frustrated because Defendants deny him the opportunity to do so as they maintain architectural barriers that deny him the opportunity to enter Ari based on his need to use a wheelchair for mobility.

123.    Plaintiff continues to be deterred from visiting Ari due to the barriers to access Defendants maintain at Ari's premises.

124.    Although Plaintiff desires and intends to visit Ari he need not engage in a futile exercise – attempting to enter Ari even though the architectural barriers at Ari's space deny him any ability to do so based on disability.

125.    Plaintiff desires that Defendants remove the architectural barriers at Ari so he can have equal access to it and avail himself of the offerings therein.

### ALLEGATIONS RELATED TO TESTER STATUS

126.    In addition to desiring equal access to Ari for himself, Plaintiff is also acts as an independent advocate for the rights of similarly situated persons with disabilities.

127.    Plaintiff desires that other similarly situated persons do not have their rights to equal access to Defendants' place of public accommodation, Ari, and the 471 West Broadway commercial facility, violated by Defendants.

128.    So that other individuals with disabilities that require wheelchairs benefit from his advocacy, Plaintiff is a "tester" for the purpose of protecting and enforcing, the equal access rights of similarly situated persons with disabilities at places of public accommodation and commercial facilities.

129.    As a tester Plaintiff acts to determine and ensure that places of public accommodation and commercial facilities are compliant with the ADA and the ADA Standards.

130.    Plaintiff therefore monitors places of public accommodation and commercial facilities to determine that they comply with the ADA and the ADA Standards.

131.    Plaintiff will monitor Ari and the 471 West Broadway commercial facility to determine and ensure that it complies with the ADA and the ADA Standards.

132.    Should Ari cease operating at the 471 West Broadway commercial facility Plaintiff will continue to monitor the space it occupied to determine and ensure that prior to the space reopening as a place of public accommodation, it complies with the ADA and the ADA Standards.

133.    As a tester, Plaintiff is additionally motivated to return to Ari and the 471 West Broadway commercial facility within which it is located.

134.    In addition to his desire to return to Ari and the 471 West Broadway commercial facility for himself, Plaintiff intends to return to Ari and the 471 West

20

Broadway commercial facility within which it is located to monitor Defendants' compliance with their obligations under the ADA and the ADA Standards as a means of enforcing his and other similarly situated persons right to equal access.

## FIRST CAUSE OF ACTION
### (Violations of the Americans with Disabilities Act)

135.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

136.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 36.105(a) and (b).

137.    As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility and has restricted use of his arms and hands.

138.    "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

139.    The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation. *See* 28 C.F.R. § 36.201(b).

140.    Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of Ari is liable to Plaintiff. *See Id.*

141. None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

142. Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Ari on the basis of disability.

143. Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

144. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are neither desired nor welcome as patrons of Ari.

145. Defendants performed design and construction work to build out Ari but failed to perform the work so that their place of public accommodation, Ari, complies with the 1991 ADA Standards.

146. Because Ari does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to his mobility disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

147. Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

148. Defendants fail to provide an integrated and equal setting for the disabled at Ari in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

149. In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make Ari compliant with the ADA Standards to the

maximum extent feasible when they performed work that constituted alterations to Ari's space.

150.    Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas of Ari in violation of 28 C.F.R. § 36.403.

151.    Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access at Ari in violation of 28 C.F.R. § 36.304.

152.    It has been and remains readily achievable for Defendants to make Ari accessible by complying with the ADA Standards.

153.    By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

154.    In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal to the extent Defendants allege that the removal of any of the barriers to access was, and remains, not readily achievable. 28 C.F.R. § 36.305.

155.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 et. seq., and 28 C.F.R § 36.101 et. seq.

156.    Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation, Ari, that is not compliant with the ADA Standards, and therefore not accessible.

**SECOND CAUSE OF ACTION**
**(Violations of The New York State Human Rights Law)**

157.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

158.    Plaintiff suffers from medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.

159.    As a result of his impaired bodily functions, Plaintiff suffers from a disability within the meaning of the N.Y. Exec. Law § 292(21).

160.    The State HRL guarantees the right of all individuals to equal opportunity with respect to places of public accommodations, regardless of disability. N.Y. Exec. Law §§ 290 and 291.

**Section § 296(2) Violations: Denial of Equality of Opportunity.**

161.    To protect the guaranteed right of persons with disabilities to equal access, the State HRL provides that it is an unlawful discriminatory practice for owners, lessees, and operators of places of public accommodation "directly or indirectly to refuse, withhold from or deny any of the accommodations, advantages, facilities or privileges" of their place of public accommodation to a person because of disability. N.Y. Exec. Law § 296(2)(a).

162.    Defendants engage in an unlawful discriminatory practice in violation of the State HRL as they directly or indirectly deny Plaintiff "equal opportunity" (i.e., equal access) to enjoy the offerings of their place of public accommodation. N.Y. Exec. Law 296(2)(a).

163.    Defendants engage in an unlawful discriminatory practice prohibited by the State HRL as they created and maintain a place of public accommodation, Ari, that is not accessible to Plaintiff due to disability. N.Y. Exec. Law § 296(2)(a).

164.    Defendants continue to discriminate against Plaintiff in violation of the State HRL by maintaining and/or creating an inaccessible place of public accommodation. N.Y. Exec. Law § 296(2).

165.    Defendants have subjected Plaintiff to disparate treatment by denying Plaintiff equal access to Ari, their place of public accommodation, because Plaintiff is disabled.

166.    Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff equal access to Ari because Plaintiff is disabled.

### Section § 296(2)(c) Violations: Failure to Make Readily Achievable Accommodations and Modifications.

167.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access at Ari in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(iii).

168.    It remains readily achievable for Defendants to remove the barriers to access at Ari.

169.    Defendants cannot demonstrate that the removal of the barriers to access at Ari is not readily achievable. N.Y. Exec. Law § 296(2)(c)(iii) and (v).

170.    Alternatively, should Defendants demonstrate that it is not readily achievable the remove any barriers to access at Ari, Defendants discriminate in violation of the State HRL as they fail to provide Plaintiff and other persons with disabilities, equal

opportunity to enjoy the privileges, advantages, and accommodations they offer at Ari through alternative methods. N.Y. Exec. Law § 296(2)(c)(v).

171.    It would be readily achievable to make Ari accessible through alternative methods.

172.    Defendants have failed to make reasonable modifications to their policies, practices, and procedures necessary to provide Plaintiff with access to Ari, and the privileges, advantages, or accommodations they offer therein in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(i).

173.    Defendants cannot demonstrate that modifying their policies, practices and procedures would fundamentally alter the nature of Ari or the privileges, advantages, or accommodations they offer.

174.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(v).

175.    It is and would have been readily achievable for Defendants to make Ari accessible to persons with disabilities.

176.    It does not and would not have imposed an undue hardship or undue burden on Defendants to have made Ari accessible for persons with disabilities.

**Section 296(6) Violations: Aid and Abet Discrimination.**

177.    Under the State HRL it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so". N.Y. Exec. Law § 296(6).

178.    Each of the Defendants have aided, abetted, incited, compelled, or coerced others to engage in unlawful discriminatory practices.

**Section 300: The State HRL's Liberal Construction Requirement.**

179.    In 2019, the New York State legislature amended the Executive Law to provide increased protections for classes protected by the State HRL. N.Y. Exec. Law § 300, as amended by Chapter 160 of the Laws of 2019, § 6.

180.    The 2019 amendment added language at the start of the State HRL's Construction section (N.Y. Exec. Law § 300) to explain that the law must be:

181.    construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. *Id.*

182.    With the 2019 amendment, the State HRL is no longer coextensive with federal anti-discrimination law.

183.    Defendants' conduct is therefore subject to a significantly stricter standard under the State HRL than under Federal anti-discrimination laws, including the ADA.

184.    The State HRL's stricter standards include those situations where the ADA has provisions that are comparably worded to the State HRL's provisions. *Id.*

185.    Defendants must therefore provide an accessible place of public accommodation in instances where the ADA does not require Defendants to provide accessibility.

186.    As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, embarrassment, stress, and anxiety.

187.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)

188.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

189.    Plaintiff suffers from medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

190.    Due to his impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

### Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.

191.    The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity (i.e., equal access) to places of public accommodations.

192.    "Equal access, in the words of the City HRL, is the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

193.    Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they as they created and maintain a place of public accommodation, Ari,

28

which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

194.     Defendants are also liable for the conduct of their employees and agents. N.Y.C. Admin. Code § 8-107(13).

195.     The conduct of Defendants' employees and agents resulted in the creation and maintenance of a place of public accommodation which is not accessible. *See Id*

196.     Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of Ari due to his disability.

197.     Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

198.     Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Ari constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); *See also* N.Y.C. Admin. Code § 19-152 and § 7-210.

199.     Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

200.    Defendants discriminate against Plaintiff as they subject him to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

201.    Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Ari because of his disability.

202.    Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent"[6] result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17).

203.    Defendants' failure to comply with the NYC Building Code as well as their failure to expend monies to upgrade and alter Ari to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

204.    Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

205.    Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations for the needs of persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a).

---

[6] *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

206.    Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed in Paragraph 107 herein so that individuals with disabilities, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Ari. *See Id.*

207.    Defendants have known, or should have known, that members of the public, which includes current and prospective patrons such as Plaintiff, have mobility disabilities.

208.    Defendants have known, or should have known, reasonable accommodations (including by failing to remove the architectural barriers to access detailed in Paragraph 107 herein) are required so that persons with mobility disabilities can have the equal opportunity to enjoy what Defendants offer at Ari.

209.    It would not cause undue hardship in the conduct of the Defendants' business to remove the architectural barriers detailed in Paragraph 107 as a reasonable accommodation for persons with disabilities.

210.    Defendant cannot demonstrate that it would cause undue hardship to the conduct of their respective businesses to remove the architectural barriers detailed in Paragraph 107 as a reasonable accommodation for persons with disabilities.

211.    Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of Defendants' failure to remove the architectural barriers identified in Paragraph 107, and their consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

212.    Section 8-130: The City HRL's Construction and Maximally Protective Role.

213.    To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

214.    The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85§ 7 and Local Law 35 § 2.

215.    The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

216.    The 2016 Amendments to the City Human Rights Law additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

217.    Due to the above-referenced amendments, the New York City Human Rights Law provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and State HRL provide to persons in the same protected classes.

218.    Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law.

219.    To the extent that Defendants' escape liability under the ADA or State HRL for their conduct alleged herein, Defendants' liability under the City HRL must be determined separately and independently from their liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

220.    Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

221.    Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

222.    Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

223.    The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

224.    Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

225.    In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

226.    Each of the Defendants have aided and abetted others in committing disability discrimination.

227.    Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

228.    Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

229.    In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

230.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, stress, and embarrassment.

231.    Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

232.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

233.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to City HRL N.Y.C. Admin. Code § 8-502.

234.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies Defendants should have expended to provide an accessible space to themselves.

235.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.

236.    The amounts Defendants diverted to themselves, and the unlawful revenues they gained, plus interest must be disgorged.

237.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violations of the New York State Civil Rights Law)

238.    Plaintiff re-alleges and incorporates herein all prior allegations set forth in this Complaint.

239.    Defendants continue to discriminate against Plaintiff in violation of the State HRL. N.Y. Exec. Law § 290 et seq.

240.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by N.Y. CRL §§ 40-c and 40-d for each and every violation.

241.    Notice of this action has been served upon the Attorney General as required by N.Y. CRL § 40-d.

## INJUNCTIVE RELIEF

242.    Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief Ordering Defendants to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

243.    Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

244.    Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, State HRL, and the City HRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.   Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the State HRL, and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.   Issue a permanent injunction ordering Defendants to close Ari at 471 West Broadway to the public until Defendants remediate all violations of the ADA, the ADA Standards, the State HRL and the City HRL, including but not limited to the violations set forth above;

C.   Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.   Award Plaintiff compensatory damages as a result of Defendants' violations of the State HRL and the City HRL;

E.   Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the City HRL;

F.   Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to N.Y. CRL §§ 40-c and 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA, the State HRL, and City HRL; and

H.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: May 24, 2023
New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**

By:/s_____
Adam S. Hanski
Attorneys for Plaintiff
40 Worth Street, Suite 602
New York, New York 10013
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com